E-FILED
Thursday, 16 April, 2026  10:21:04 AM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

|  |  |
|---|---|
| CHARLENE CRIPE, as the Independent Administrator of THE ESTATE OF REGINA RADCLIFF, deceased,<br><br>        Plaintiff,<br><br>v.<br><br>MONTGOMERY COUNTY, *et al.*,<br>        Defendants. | Case No. 3:25-cv-03401-JEH-RLH |

**Order**

This matter is now before the Court on Defendants Advanced Correctional Healthcare ("ACH") and Mary Dambacher's Motion to Dismiss Counts III and IV (Doc. 22) and Defendants Sheriff Tyson Holshouser and Montgomery County's Motion to Dismiss Counts I and III (Doc. 29) of Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants ACH and Dambacher's Motion is GRANTED IN PART and DENIED IN PART, and Defendants Sheriff Holshouser and Montgomery County's Motion is GRANTED.

**I**

Plaintiff Charlene Cripe, as the Independent Administrator of the Estate of Regina Radcliff, filed an Amended Complaint under 42 U.S.C. § 1983 alleging several Defendants violated Ms. Radcliff's constitutional rights while she was detained at the Montgomery County Jail ("Jail") from December 20-22, 2024.[1] (Doc.

---

[1] Plaintiff also asserts claims under the Illinois Survival Act, 755 ILCS 5/27-6, and the Illinois Wrongful Death Act, 740 ILCS 180/0.01-180/2.2.

1

20). Shortly after booking, Ms. Radcliff began experiencing opioid withdrawal and requested aid. Defendant Dambacher, a nurse practitioner, ordered some medications but allegedly failed to administer a withdrawal protocol, such as the Clinical Opiate Withdrawal Scale ("COWS"), to assess Ms. Radcliff and determine what medical interventions were necessary. Plaintiff alleges Ms. Radcliff's health continued to rapidly deteriorate over the next two days. Despite obvious signs of distress, Defendants Dambacher and correctional officers allegedly failed to provide medical care, order hospitalization, or ensure meaningful monitoring or treatment.

On December 22, 2024, Ms. Radcliff's condition had progressed to the point of severe dehydration, which caused her to go into cardiac arrest. Ms. Radcliff was transported to Memorial Hospital in Springfield, Illinois and pronounced dead on December 23, 2024.

On January 22, 2026, Defendants ACH and Dambacher filed a Motion to Dismiss (Doc. 22), Plaintiff filed a Response (Doc. 23), and Defendants filed a Reply (Doc. 25). On March 3, 2026, Defendants Sheriff Holshouser and Montgomery County filed a Motion to Dismiss (Doc. 29), and Plaintiff filed a Response (Doc. 31). Defendants' Motions to Dismiss are limited to Counts I, III, and IV of Plaintiff's Amended Complaint. In Count I, Plaintiff alleges a claim pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against Defendant Sheriff Holshouser. *Id.* at pp. 17-19. In Count III, Plaintiff alleges a *Monell* claim against Defendants ACH and Sheriff Holshouser. *Id.* at pp. 21-22. Count IV alleges a claim under the Illinois Wrongful Death Act against Defendant Dambacher. *Id.* at pp. 22-24.

## II

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which

2

relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). "A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The pleading standard in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 at 556).

### III

### A

Defendants Sheriff Holshouser and Montgomery County argue Counts I and III are duplicative because both Counts allege a *Monell* claim against the Sheriff's Office. Defendants also argue the allegations in Plaintiff's Amended Complaint are insufficient to support a *Monell* claim against the Sheriff's Office. (Doc. 29).

Defendant ACH also argues the Court should dismiss Count III because it fails to state a *Monell* claim. (Doc. 22). ACH asserts Plaintiff makes the conclusory allegation that it markets its services by stating that "the company avoids major costs by having persons in custody with the worst medical emergencies released

3

on their own recognizance or 'sent somewhere else' so ACH and the county can avoid responsibility for their care and the costs associated with it." (Doc. 20 at ¶ 8). ACH argues Plaintiff failed to allege facts supporting the conclusion that an unconstitutional practice or policy was the "moving force" behind the violation, as it is unclear how a policy of sending inmates out for higher levels of care is unconstitutional. (Doc. 22 at p. 3).

In response, Plaintiff argues the Court should not dismiss Counts I and III because she pled two distinct *Monell* theories against Defendant Sheriff Holshouser in his official capacity. Plaintiff states that Count I alleges the Sheriff himself maintained constitutionally deficient policies and practices governing the operation of the Jail, including policies concerning training, screening, monitoring, referral, and treatment of detainees experiencing opioid withdrawal and other medical emergencies. Plaintiff states Count III alleges that ACH maintained constitutionally deficient policies and practices governing the provision of medical care at the Jail and that Sheriff Holshouser is liable for the harm caused by those policies because the Sheriff remained constitutionally responsible for detainees' medical care even after contracting with ACH. (Doc. 31 at p. 2). Plaintiff also argues she pled extensive factual allegations, which are sufficient to state a *Monell* claim against ACH. (Doc. 23).

Three types of actions can support liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). "Inaction, too, can give rise to liability in some instances if it reflects 'a conscious decision not to take action.'" *Dean v. Wexford*

4

*Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quoting *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017)). Plaintiff must also show that the action was the "moving force" behind the constitutional violation. *LaPorta*, 988 F.3d at 987 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). Private corporations acting under color of state law—like ACH—are treated as municipalities for purposes of § 1983 and can be sued when their actions violate the Constitution. *Dean*, 18 F.4th at 235.

Count I of Plaintiff's Amended Complaint is titled "Claims under 42 U.S.C. § 1983: HOLSHOUSER." (Doc. 20 at p. 17). Plaintiff alleges Defendant Sheriff Holshouser:

    a.  was deliberately disregarded the immediate and serious threat to the health and well-being of persons in the Montgomery County Jail and exhibited deliberate and callous indifference to serious medical needs by denying access to intensive and structured medical health care, treatment and observation necessary to treat serious medical needs and prevent suffering and death.

    b.  well aware that there were detainees confined in the Montgomery County Jail who suffered from severe medical health needs and were at risk of injury and/or death. Despite this knowledge, Defendant HOLSHOUSER intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

    c.  knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could die, that such deaths were reasonably foreseeable, that the threat of this was imminent and immediate.

    …

*Id.* at ¶¶ 106-108. Plaintiff alleges Ms. Radliff suffered a substantial risk of serious harm while under the care and custody of Sheriff Holshouser, and Sheriff

Holshouser reacted to this risk in an objectively and subjectively unreasonable manner. *Id.* at ¶ 110.

Count III is titled "*Monell* Claim: Defendants Holshouser and ACH." *Id.* at p. 21. Plaintiff alleges Defendants Sheriff Holshouser and ACH:

a. failed to establish and/or implement policies, practices and procedures to ensure that detainees at the Montgomery County Jail receive prompt and appropriate medical care for serious medical needs, including specifically providing monitoring and care by medically-trained personnel for individuals experiencing drug withdrawal or intoxication/overdose;

b. failed to adequately assess and provide adequate care and treatment for detainees exhibiting signs of distress;

c. failed to adequately monitor the health conditions of detainees;

d. failed to ensure through training, supervision and discipline that correctional, supervisory and medical staff at or assigned to the Montgomery County Jail, in necessary circumstances, make a prompt referral for health care services outside the Jail;

e. failed to ensure through training, supervision and discipline that correctional and medical staff adequately communicate and document inmates' health conditions;

f. failed to ensure through training, supervision and discipline that correctional and medical staff properly respond to inmates' medical conditions;

g. possessed knowledge of deficiencies in the policies, practices, customs and procedures and approved and/or deliberately ignored these deficiencies.

*Id.* at ¶ 125(a)-(g).

"The Seventh Circuit has reminded courts not to apply a heightened pleading standard to *Monell* claims." *Banning v. Cnty. of Shelby*, No. 21-3100, 2022

WL 22916241, at *3 (C.D. Ill. May 10, 2022) (citing *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016)). Plaintiff's Amended Complaint contains extensive, detailed allegations to support a *Monell* claim against Defendants Sheriff Holshouser and ACH. (*See, e.g.* Doc. 20 at ¶¶ 7-10, 66, 68-70, 73-80, 97-102). For instance, Plaintiff alleges Sheriff Holshouser failed to train correctional staff to recognize drug overdoses and withdrawal and respond to medical emergencies. *Id.* at ¶¶ 73, 109(a)-(c). Regarding ACH, Plaintiff alleges:

> As of December 2024, defendant ACH had established and maintained a policy, de facto policy, or custom of routinely and systematically denying necessary medical treatment to inmates at facilities where it was contracted to provide medical care. This policy, de facto policy, or custom included refusing to summon emergency medical services for detainees like Regina who are clearly experiencing a medical emergency. It is common at facilities where ACH provides medical services for inmates with clear symptoms of serious medical illness, injury, or conditions, to be denied medical care and have their requests for care ignored. Further, it is common at facilities where ACH provides medical services for ACH to unjustifiably and unconstitutionally withhold access to hospital care where it is required for the inmate's health and wellbeing.

*Id.* at ¶ 97. Plaintiff also provides examples of how detainees in other facilities were harmed by ACH's alleged policies and practices. *Id.* at ¶¶ 81-96. The Court finds Plaintiff's allegations are sufficient to proceed on a *Monell* claim against Defendants Sheriff Holshouser and ACH.

That being said, however, the Court agrees with Defendants Sheriff Holshouser and Montgomery County that Counts I and III, which Plaintiff claims are both *Monell* claims against Sheriff Holshouser, are duplicative. Although Plaintiff argues that Count I is a *Monell* claim against Defendant Sheriff Holshouser, the allegations in Count I appear to allege a Fourteenth Amendment

claim against Defendant Holshouser in his individual capacity, rather than an *Monell* claim in his official capacity.

By combining a *Monell* claim against both Sheriff Holshouser and ACH in Count III, it is unclear which policies, practices, and customs Plaintiff attributes to ACH and which she attributes to Sheriff Holshouser. *See* Fed. R. Civ. P. 8. Plaintiff should state a separate *Monell* claim against Defendants Sheriff Holshouser and ACH to prevent confusion.

Defendants Sheriff Holshouser and Montgomery County's Motion to Dismiss Counts I and III and Defendant ACH's Motion to Dismiss Count III are granted. Counts I and III are dismissed without prejudice. Plaintiff is given leave to file a Second Amended Complaint within 30 days of this Order.

**B**

In Count IV of Plaintiff's Amended Complaint, Plaintiff alleges a claim against Defendant Dambacher under the Wrongful Death Act, 740 ILCS 180/0.01-180/2.2. (Doc. 20 at pp. 22-24).

In her Motion to Dismiss, Defendant Dambacher argues the Court should dismiss Count IV because Plaintiff did not produce a certificate or affidavit showing that a physician found the claim to have merit, as required by the Illinois Healing Arts Malpractice Act. 735 ILCS 5/2-622(a)(1). (Doc. 22 at pp. 5-7). Plaintiff argues Defendant Dambacher's demand for § 2-622 affidavit at the pleading stage is contrary to federal case law. (Doc. 23 at pp. 12-13).

In any claim alleging medical malpractice, the plaintiff "must attach to his complaint either (1) an affidavit confirming that he has reviewed the facts of the case with a health care professional and that the professional believes that there is a 'reasonable and meritorious cause for the filing of such action,' as well as a copy of the professional's written report on the case, or (2) an affidavit stating an acceptable reason why such an opinion and report could not be obtained." *Hahn*

8

*v. Walsh*, 762 F.3d 617, 628 (7th Cir. 2014) (quoting § 5/2-622(a)). "To minimize frivolous malpractice suits, Illinois law requires the plaintiff to file a physician's certificate of merit and accompanying report with every malpractice complaint." *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (citations omitted). Failure to file the certificate is grounds for dismissal. § 5/2-622(g).

However, in *Young v. United States*, the Seventh Circuit held that "a complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622 . . . . Rule 8 of the Federal Rules of Civil Procedure specifies what a complaint must contain. It does not require attachments." 942 F.3d 349, 351 (7th Cir. 2019); *see also Berk v. Choy*, 146 S. Ct. 546, 554 (2026).

In *Young*, the Seventh Circuit explained a *pro se* plaintiff should have until the summary judgment stage to comply with § 5/2-622. *Young*, 942 F.3d at 351 ("But if a prisoner or other *pro se* plaintiff has until the summary judgment stage to comply with the state law, information obtained in discovery may allow a physician to evaluate the medical records and decide whether there is reasonable cause for liability."). Here, Plaintiff is not *pro* se. Therefore, the Court finds it is appropriate for Plaintiff to comply with expert disclosure requirements under the Federal Rules of Civil Procedure and to disclose her § 5/2-622 affidavit when disclosing her expert reports. Defendant Dambacher's Motion to Dismiss Count IV is denied.

**IT IS THEREFORE ORDERED:**

1. **Defendants Advanced Correctional Healthcare (ACH) and Mary Dambacher's Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint [22] is GRANTED IN PART and DENIED IN PART. Defendants' request to dismiss Count III against ACH is GRANTED. Count III is dismissed without prejudice. Defendants' request to dismiss Count IV is DENIED. Plaintiff is directed to provide her affidavit pursuant to 735 ILCS 5/2-622 when disclosing her expert reports. The**

Court will set a deadline in a scheduling order, which will be entered at a later date.

2.  Defendants Sheriff Tyson Holshouser and Montgomery County's Motion to Dismiss Counts I and III of Plaintiff's Amended Complaint [29] is GRANTED. Counts I and III of Plaintiff's Amended Complaint against Defendant Sheriff Holshouser are dismissed without prejudice.

3.  Plaintiff is given leave to file a Second Amended Complaint on or before May 18, 2026, to replead her *Monell* claims against Defendants ACH and Sheriff Holshouser.

*It is so ordered.*

Entered: April 16, 2026

<u>s/Jonathan E. Hawley</u>
U.S. District Judge

10