E-FILED
Wednesday, 07 October, 2026 09:44:17 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

CHARLENE CRIPE, as the Independent Administrator of THE ESTATE OF REGINA RADCLIFF, deceased,
Plaintiff,

v.

MONTGOMERY COUNTY, *et al.*,
Defendants.

Case No. 3:25-cv-03401-JEH-RLH

## Order

This matter is now before the Court on Defendants Advanced Correctional Healthcare ("ACH") and Mary Dambacher's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 38). For the reasons stated below, Defendants' Motion is DENIED.

## I

Plaintiff Charlene Cripe, as the Independent Administrator of the Estate of Regina Radcliff, filed a Second Amended Complaint under 42 U.S.C. § 1983 alleging several Defendants violated Ms. Radcliff's Fourteenth Amendment rights while she was detained at the Montgomery County Jail ("Jail") from December 20-22, 2024. (Doc. 33).[1] Shortly after booking, Ms. Radcliff began experiencing opioid withdrawal and requested medical attention. Defendant Dambacher, a nurse practitioner, ordered some medications but allegedly failed to administer a withdrawal protocol, such as the Clinical Opiate Withdrawal Scale ("COWS"), to

[1] Plaintiff also asserts claims under the Illinois Survival Act, 755 ILCS 5/27-6, and the Illinois Wrongful Death Act, 740 ILCS 180/0.01-180/2.2.

assess Ms. Radcliff and determine what medical interventions were necessary. Plaintiff alleges Ms. Radcliff's health rapidly deteriorated over the next two days. Despite obvious signs of distress, Defendants Dambacher and correctional officers allegedly failed to provide medical care, order hospitalization, or ensure meaningful monitoring or treatment for Ms. Radcliff. On December 22, 2024, Ms. Radcliff's condition had progressed to the point of severe dehydration, which caused her to go into cardiac arrest. Ms. Radcliff was transported to Memorial Hospital in Springfield, Illinois, and died on December 23, 2024.

On January 22, 2026, Defendants ACH and Dambacher filed a Motion to Dismiss Counts III and IV of Plaintiff's First Amended Complaint. (Doc. 22). In Count III, Plaintiff alleged a *Monell* claim against Defendants ACH and Montgomery County Sheriff Holshouser. (Doc. 20 at pp. 21-22). In Count IV, Plaintiff alleged a claim under the Illinois Wrongful Death Act against Defendant Dambacher. *Id*. at pp. 22-24.

On April 16, 2026, the Court granted Defendants' request to dismiss Count III, finding that combining a *Monell* claim against both ACH and Sheriff Holshouser made it unclear which policies, practices, and customs Plaintiff attributed to ACH and which she attributed to Sheriff Holshouser. (Doc. 32 at p. 8). The Court denied Defendants' request to dismiss Count IV. *Id.* at p. 9. The Court gave Plaintiff leave to file a Second Amended Complaint to replead her *Monell* claims against Defendants ACH and Sheriff Holshouser. *Id.* at p. 10. The Court instructed that "Plaintiff should state a separate *Monell* claim against Defendants Sheriff Holshouser and ACH to prevent confusion." *Id.* at p. 8.

On May 12, 2026, Plaintiff filed a Second Amended Complaint and separated the *Monell* claims against Sheriff Holshouser and ACH. (Doc. 33).

On June 25, 2026, Defendants ACH and Dambacher filed a Motion to Dismiss under Rule 12(b)(6) arguing that the Court should dismiss the *Monell*

claim against ACH in Count III and strike paragraphs 64-66, 82-91, and 92-109 of Plaintiff's Second Amended Complaint. (Doc. 38). Defendants' Motion did not contain any arguments pertaining to Defendant Dambacher. On July 7, 2026, Plaintiff filed a Response in opposition. (Doc. 43).

**II**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). "A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The pleading standard in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 at 556).

**III**

**A**

Defendant ACH argues the Court should dismiss Count III because it fails to state a *Monell* claim. ACH asserts Plaintiff makes the conclusory and inaccurate

allegation that ACH markets its services by stating that "the company avoids major costs by having persons in custody with the worst medical emergencies released on their own recognizance or 'sent somewhere else' so ACH and the county can avoid responsibility for their care and the costs associated with it." (Doc. 33 at ¶ 8). ACH argues Plaintiff failed to allege facts supporting the conclusion that an unconstitutional practice or policy was the "moving force" behind the violation, as it is unclear how a policy of sending inmates out for higher levels of care would be unconstitutional.

Additionally, ACH argues Plaintiff's Second Amended Complaint alleges that Ms. Radcliff suffered as a result of *not* being sent out of the facility. Therefore, the purported policy to send inmates "somewhere else" is directly opposite of the conduct Plaintiff alleges violated Ms. Radcliff's Fourteenth Amendment rights and cannot be the moving force behind the alleged violation.

ACH further argues that Plaintiff failed to establish a *Monell* claim by alleging that "ACH employs a strategy of releasing detainees on their own recognizance, discharging them from jail, and sending them to the hospital, at which point the former detainee becomes responsible for the cost of avoidable emergency treatment." *Id.* at ¶ 87. ACH argues that "[t]here is a constitutional right for detainees to receive medical care – not to have that medical care paid for by the taxpayer." (Doc. 38 at p. 4). ACH notes that Plaintiff included allegations about detainees at other county jails who allegedly suffered as a result of not being sent out of the facility for medical care. (Doc. 33 at ¶¶ 92-109). ACH argues it is impossible for the alleged policy at issue—discharging or sending inmates outside of the facility for the purpose of saving costs—to be the moving force behind the alleged violation of *not* sending inmates out of the facility for further care.

In Plaintiff's Response, Plaintiff argues this Court already determined that her *Monell* allegations against ACH were "sufficient to proceed" when the Court

ruled on Defendants' Motion to Dismiss Count III of Plaintiff's Amended Complaint. (Doc. 32 at p. 7). The Court did not dismiss Count III because the allegations were thin, conclusory, or legally deficient. Instead, the Court dismissed Count III because the combined *Monell* theories against Defendants ACH and Sheriff Holshouser in a single count made it "unclear which policies, practices, and customs Plaintiff attributes to ACH and which she attributes to Sheriff Holshouser." *Id.* at p. 8. The Court directed Plaintiff to "state a separate *Monell* claim" against each Defendant. *Id.* Plaintiff asserts the Second Amended Complaint does exactly what the Court directed and pleads Count III as a stand-alone *Monell* claim against ACH and Count IV as a *Monell* claim against Sheriff Holshouser. (Doc. 33 at ¶¶ 128–143).

"The Seventh Circuit has reminded courts not to apply a heightened pleading standard to *Monell* claims." *Banning v. Cnty. of Shelby*, No. 21-3100, 2022 WL 22916241, at *3 (C.D. Ill. May 10, 2022) (citing *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016)). This Court previously stated that Plaintiff's Amended Complaint contained "extensive, detailed allegations" to support a *Monell* claim against ACH. (Doc. 32 at p. 7). Plaintiff did not make substantive changes to her Second Amended Complaint. Plaintiff simply separated the *Monell* claims against Sheriff Holshouser and ACH as the Court directed. The Court finds that Plaintiff's allegations are sufficient to proceed on a *Monell* claim against ACH.

**B**

Defendants argue Section B of Plaintiff's Second Amended Complaint titled "The Setting for Regina's Incarceration" should be stricken pursuant to Rule 12(f). (Doc. 33 at ¶¶ 64-66). Defendants assert this section is not a "short and plain" statement of the claim as required by Rule 8(a)(2). Defendants argue the allegations in paragraphs 64-66 are immaterial and would require them to plead expert opinions before any discovery is completed.

Plaintiff argues Section B should not be stricken, as the allegations in paragraphs 64-66 are material to pleading deliberate indifference and her *Monell* claim. Plaintiff asserts these paragraphs establish that opioid withdrawal is a common, well-recognized, and potentially fatal medical emergency in jail settings.

Paragraphs 64-66 of state:

> 64. In 2019, the National Institute for Drug Abuse reported 70,630 deaths from drug abuse, including "those caused by synthetic opioids other than methadone (primarily fentanyl)," which accounted for over 36,000 of those deaths. According to the Centers for Disease Control, "synthetic opioids other than methadone are the main driver of overdose deaths."
>
> 65. The Centers for Disease Control reports that, in Illinois alone, during 2018, over 2,700 people died as a result of drug overdose.
>
> 66. The risk attendant to drug overdoses and withdrawal from drugs were and should have been well known to the Defendants, HOLSHOUSER, ACH and MONTGOMERY COUNTY. These Defendants had a duty under the U.S. Constitution to enact policies and procedures to protect pretrial detainees, including Regina, from said risks including the development of policies and training to guide their employees, including the Defendants, in the care and supervision of detainees suffering from emergency medical conditions.

*Id.*

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are generally disfavored because of their potential to delay proceedings. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (citation omitted). Nonetheless, a motion to strike can be a useful means of removing "unnecessary clutter" from a case, which may ultimately expedite the proceedings. *Id.*

The allegations in paragraphs 64-66 were also included in Plaintiff's First Amended Complaint. (Doc. 20 at ¶¶ 64-66). Defendants ACH and Dambacher did not move to strike them when they filed their first Motion to Dismiss. (Doc. 22). Under Rule 12(g)(2), "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2). Defendants' request to strike paragraphs 64-66 is denied.

**C**

Defendants also argue paragraphs 82-91 regarding ACH's alleged cost-cutting practices should be stricken because the allegations are immaterial and impertinent. (Doc. 33 at ¶¶ 82-91). Defendants assert ACH is not involved in cost-cutting practices that result in medically deficient care to inmates. Defendants contend the contract between ACH and Montgomery County Jail for the provision of medical treatment services "flatly disproves" Plaintiff's allegations and provides no financial incentive for ACH to deny care to inmates. (Doc. 33 at p. 7; Doc. 33-1).

Plaintiff argues the contract between ACH and Montgomery County Jail does not support striking her cost-cutting allegations. In fact, Plaintiff argues the contract corroborates her allegations of cost-cutting practices.

As a general matter, "a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 503 (7th Cir. 2013) (citation omitted). Documents attached to a motion to dismiss may be considered only where they are referred to in the complaint and central to the claim. *Id.* at 505. When such a document is considered, the Court may examine the document for itself; it need not accept either party's characterization of its legal effect. *Id.*

ACH may dispute Plaintiff's characterization of the contract and its incentives, but this dispute is appropriate at summary judgment, not in a Rule 12(b)(6) motion. It would be inappropriate for the Court to accept Defendants' interpretation of the contract and find that Plaintiff's allegations were immaterial and impertinent at this early stage. Defendants' request to strike paragraphs 82-91 is denied.

**D**

Defendants argue Section D of Plaintiff's Second Amended Complaint, which includes cases involving other detainees' medical treatment, should be stricken because none of these cases have been decided against ACH and their inclusion is highly prejudicial. (Doc. 33 at ¶¶ 92-109).

Plaintiff asserts the incidents involving other detainees were included to show that "ACH had notice its model was failing detainees and causing serious harm, and to show a pattern." (Doc. 43 at p. 12). Plaintiff argues that prior incidents need not have resulted in judgments against ACH to be relevant, as the prior incidents alerted ACH to recurring failures to provide medical care, including the alleged failure to monitor withdrawal, summon emergency care, and send detainees to the hospital before their conditions became catastrophic.

The allegations in paragraphs 92-109 were included in Plaintiff's First Amended Complaint at paragraphs 81-96. In its Order addressing Defendants' first Motion to Dismiss, the Court already noted that these allegations are relevant to Plaintiff's *Monell* claim. (Doc. 32 at p. 7) (citing Doc. 20 at ¶¶ 81-96)). Defendants' request to strike paragraphs 92-109 is denied.

**IT IS THEREFORE ORDERED:**

1. **Defendants Advanced Correctional Healthcare and Mary Dambacher's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [38] is DENIED.**

2. **Defendants Advanced Correctional Healthcare and Dambacher are directed to answer Plaintiff's Second Amended Complaint within 21 days of this Order.**

*It is so ordered.*

Entered: October 7, 2026

s/Jonathan E. Hawley
U.S. District Judge